**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN ROSADO, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>THE RITZ-CARLTON HOTEL COMPANY, L.L.C., and MARRIOTT INTERNATIONAL, INC.,<br><br>Defendant. | NOTICE OF REMOVAL<br><br>Civil Action No. 26-cv-4617 |

TO: The Honorable Judges of the United States District Court for the Southern District of New York

Clerk of Court
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Sabine Jean
LAWYERS FOR JUSTICE, P.C.
217 Broadway, Suite 511
New York, New York 10007
Tel: (516) 587-8423
Fax: (818) 265-1021
s.jean@calljustice.com
*Attorneys for Plaintiff*

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants The Ritz-Carlton Hotel Company, L.L.C. ("Ritz-Carlton") and Marriott International, Inc., ("Marriott") (collectively "Defendants"), by and through their attorneys, hereby give notice of removal of the above-captioned action from the Supreme Court of the State of New York, County of New York, index number 155428/2026, to the United States District Court for the

Southern District of New York. For the avoidance of doubt, all defendants join in the removal of this action to this Court. In support of this notice of removal, Defendants state as follows:

PROCEDURAL BACKGROUND

1. Plaintiff commenced this action on or about April 28, 2026 by filing a summons and complaint (with jury demand) in the Supreme Court of the State of New York, County of New York, captioned as *Juan Rosado v. The Ritz-Carlton Hotel Company, L.L.C., and Marriott International, Inc.*, index number 155428/2026. A true and correct copy of the summons and complaint is attached hereto as Exhibit A.

2. In the complaint, Plaintiff, on behalf of himself and a putative class, asserts claims against Defendants under Articles 6 and 19 of the New York Labor Law (NYLL) and supporting regulations for alleged failure to pay minimum and regular wages (including failure to provide uniform maintenance pay and failure to reimburse for business expenses), failure to pay overtime, failure to pay wages timely, failure to provide wage notices and statements, improper retainer of service fees, failure to provide spread of hours pay, failure to provide a day of rest, and unjust enrichment. (Ex. A ¶¶ 71-134; *id.* at pp. 15-26.) Plaintiff seeks alleged unpaid wages, liquidated damages, restitution, equitable and injunctive relief to remedy alleged violations, prejudgment and post-judgment interest, and attorneys' fees and costs (including expert fees). (*Id.* ¶¶ 77, 84, 92, 101, 106, 115, 120, 127, 134; *id.* at pp. 15-19, 21-26 (including "Prayer for Relief").)

3. Plaintiff purports to bring this action as a class action pursuant to Article 9 of the New York Civil Practices Law and Rules. (*Id.* ¶¶ 24, 29.) Plaintiff seeks to represent a class allegedly consisting of "[a]ll current and former hourly-paid or non-exempt employees who worked for Defendants in New York during the period from six years prior to the filing of this

Complaint to the date of final judgement in this action (the 'Class Members')." *Id.*[1] Therefore, for the purposes of this notice of removal, this matter is a class action as that term is defined in 28 U.S.C. §§ 1332(d)(1)(B) and 1453.[2]

4. Plaintiff served Defendants' registered agent with a copy of the summons and complaint in New York, New York on May 1, 2026. A true and correct copy of the affidavit of service is attached as Exhibit B.

5. On May 20, 2026, Defendants' counsel filed a notice of appearance in the action. A true and correct copy of the notice of appearance is attached as Exhibit C.

6. On May 20, 2026, the parties stipulated that the deadline for Defendants to answer, move, or otherwise respond to the complaint would be extended to June 4, 2026. A true and correct copy of that stipulation is attached as Exhibit D.

7. No further processes, pleadings, or orders have been served on Defendants and no Defendant has filed a responsive pleading to the complaint.

8. No previous notice of removal has been filed or made with this Court for the relief sought herein.

## GROUNDS FOR REMOVAL

### I. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441.

9. "Any civil action brought in a State court of which the district courts of the United

[1] Defendants recite the allegations in the Complaint solely because courts "generally evaluate jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when defendant files the notice of removal." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). Otherwise, Defendants strongly contest the allegations in the Complaint, including, but not limited to, the allegation that Marriott International, Inc. employed Plaintiff.

[2] Defendants do not concede, and specifically dispute, Plaintiff's contention that this lawsuit may properly proceed as a class action.

States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending.” 28 U.S.C. § 1441(a).

10. Federal district courts have original jurisdiction over all civil actions between citizens of different states when the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

11. Defendants may remove this case to this Court in accordance with 28 U.S.C. §§ 1332 and 1441 because this is an action between citizens of different states and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

A. <u>There is complete diversity of citizenship between the parties.</u>

1. *Plaintiff is a citizen of New York*

12. An individual is a citizen of the state in which the individual is domiciled. *See Adrian Family Partners I, L.P. v. ExxonMobil Corp.*, 79 F. App’x 489, 491 (2d Cir. 2003). Citizenship is determined by the individual’s domicile at the time the lawsuit is filed in state court. *See Law Offs. of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App’x 622, 625 (2d Cir. 2012) (“Jurisdictional facts such as the amount in controversy are evaluated on the basis of the pleadings viewed at the time when the defendant files the notice of removal.”)

13. Plaintiff alleges in the complaint that he is a “resident of the State of New York, County of Bronx.” Ex. A ¶ 8. Plaintiff is an individual, and therefore, is a citizen of New York for purposes of 28 U.S.C. § 1332.

2. *Defendants are citizens of Delaware and Maryland.*

14. “[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .” 28 U.S.C. § 1332(c)(1). Accordingly, for the purpose of determining diversity

subject matter jurisdiction as to a corporation, the "principal place of business" refers to:

> the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . . [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings. . . .

*See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). A limited liability company "takes the citizenship of each of its members." *Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 453, 455 (S.D.N.Y. 2014), aff'd, 615 F. App'x 689 (Fed. Cir. 2015) (citations omitted). A partnership is a citizen of all the state of which its partners are citizens. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 196-96 (1990).

15. Currently and at all relevant times, Ritz-Carlton, a limited liability company, is and has been a wholly-owned subsidiary of parent company Marriott. Both Ritz-Carlton and Marriott are citizens of the State of Delaware and State of Maryland. Each is incorporated in Delaware and has its principal place of business (where the majority of its administrative and executive functions are performed) located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814. (*See* Declaration of Andrew Wright ¶¶ 4-5 attached as Exhibit E.)

16. None of Ritz-Carlton's five members, all of whom are listed below, are citizens of New York:

a. Marriott International Capital Corporation is incorporated in Delaware and has its principal place of business located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814;

b. Marriott Senior Holding Co. is incorporated in Delaware and has its principal place of business located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814;

c. MI Holding, L.P. ("MI Holding") is incorporated in Delaware and has its principal place of business located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814;

d. RC Marriott, Inc. ("RC Marriott") is incorporated in Delaware and has its

principal place of business located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814; and

e. RC Marriott III, Inc. is incorporated in Delaware and has its principal place of business located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814. *Id.* ¶ 4.

f. MI Holding, a limited partnership, has two partners: RC Marriott and RC Marriott II, Inc. ("RC Marriott II"). Like RC Marriott, RC Marriott II is incorporated in Delaware and has its principal place of business located at 7750 Wisconsin Avenue, Bethesda, Maryland 20814. *Id.*

17. Neither Ritz-Carlton nor Marriott is or has been a New York citizen at any relevant time.

18. Accordingly, complete diversity of citizenship exists between Plaintiff and Defendants.

19. Plaintiff's putative class claims do not alter this analysis as only the named plaintiff is considered for diversity purposes. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 334 (2d Cir. 2006) (in "a class action only the named plaintiffs need be diverse with the defendants to establish diversity jurisdiction").

B. <u>The amount in controversy exceeds $75,000.00.</u>[3]

20. A defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee Basin Operating*

[3] This notice of removal addresses the alleged nature and amount of damages placed at issue by the complaint. Defendants' references to alleged damage amounts are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that Plaintiff's claims are without merit and that Defendants are not liable to Plaintiff. Defendants specifically deny that Plaintiff has a viable claim against Defendants and/or has suffered any damage as a result of any act or omission by any Defendant. No statement or reference contained in this filing—or any other filing—shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the complaint or otherwise.

*Co. v. Owens*, 574 U.S. 81, 87-88 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court").

21. Where, as here, a plaintiff does not expressly plead a specific amount of damages in the complaint, a defendant must only show a "reasonable probability" that the amount in controversy exceeds $75,000.00. *See Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 262 (S.D.N.Y. 2017). The amount in controversy requirement for diversity jurisdiction pursuant to 28 U.S.C. § 1332 "may be met by a combination of economic and non-economic losses . . . ." *Id*.

22. While Plaintiff does not specify the amount of damages he seeks, even a conservative, good faith estimate of the alleged damages at issue makes clear that the amount in controversy exceeds $75,000.00.

23. Plaintiff purports to seek "damages," "non-overtime wages, including minimum and regular wages, uniform maintenance pay, reimbursement for business expenses (e.g., uniforms)," "overtime wages," damages for failure to provide "spread of hours" pay, damages for "failure to timely pay wages" to manual workers on a weekly basis, up to $5,000.00 for the alleged failure to provide wage notices, up to $5,000.00 for the alleged failure to provide wage statements, "attorneys' fees and costs," "equitable and injunctive relief to remedy violations," and "other relief." (*See* Ex. A ¶¶ 7, 46-134; *id.* at p. 26 ("Prayer for Relief").) Plaintiff claims Defendants' purported violations were "willful." (*Id.* ¶¶ 6, 70, 83, 99, 105, 114.)

24. The statute of limitations for Plaintiff's claims spans six years. N.Y. Lab. Law §§ 198(3); 663(3). This covers the entirety of Plaintiff's employment with Ritz-Carlton. Plaintiff alleges Ritz-Carlton employed him at its "New York Central Park location from approximately July 2025 to approximately February 2026," which is approximately 30 weeks. (Ex. A ¶ 10.)

25. Plaintiff further alleges that, throughout his employment, he "worked [10] or more hours a day," "worked more than seven consecutive days," and "worked over [40] hours in workweek and [was] not compensated for the overtime hours worked." (*See id.* ¶¶ 74, 118, 126.)

26. Plaintiff's allegations place the amount in controversy in excess of $75,000.00. For example:

a. From the pay period beginning July 26, 2025 through December 31, 2025, the weekly rate of uniform maintenance pay for employees who worked over 30 hours per week in New York City for an employer of 11 or more employees was $20.50. 12 N.Y.C.R.R. § 146-1.7(a)(1)(i). The rate increased to $21.10 on January 1, 2026. *Id.* Throughout Plaintiff's employment, the Ritz-Carlton employed more than 11 employees. (Declaration of Kristen Palagano ¶ 4 attached as <u>Exhibit</u> F.) Assuming Plaintiff was entitled to uniform maintenance pay from the pay period beginning July 26, 2025 through February 2, 2026, Plaintiff's alleged damages for the purported unpaid uniform maintenance pay would be $535.40 [($20.50 * 22 weeks) + ($21.10 * 4 weeks)].

b. From the pay period beginning July 26, 2025 through February 2, 2026, Plaintiff's base hourly rate of pay was $40.32 per hour. *Id.* ¶ 8. Assuming Plaintiff's regular rate of pay during this time period was $40.32 per hour, Ritz-Carlton should have paid Plaintiff $60.48 per hour for each overtime hour that he worked. If Plaintiff worked only 20 hours of overtime each week (instead of 30 as he alleges) and Ritz-Carlton failed to "compensate[] [Plaintiff] for the overtime hours worked" (Ex. A ¶ 74), Plaintiff's alleged damages for the purported failure to pay overtime would be $32,659.20 [($40.32 * 1.5) * 20 hours * 27 weeks].

c. From July 26, 2025 through December 31, 2025, the minimum hourly wage for employees who worked in New York City was $16.50. N.Y. Lab. Law § 652(1-a). The rate

increased to $17.00 on January 1, 2026. Assuming Plaintiff worked only six days per week (instead of seven as he alleges) and was entitled to spread of hours pay each day he worked, Plaintiff's alleged damages for the purported unpaid spread of hours pay would be $2,586.00 [($16.50 * 22 weeks * 6 days) + ($17.00 * 4 weeks * 6 days)].

d. The NYLL provides for damages of $50.00 per workday for each workday an employee fails to receive a wage notice within 10 business days of commencing employment, up to $5,000.00. N.Y. Lab. Law § 198(1-b). Assuming Plaintiff worked only six days per week (instead of seven as he alleges), Plaintiff's alleged damages for the purported failure to provide him a wage notice would be $5,000.00 [$50.00 * ((27 weeks * 6 days) – 10 days)].

e. The NYLL provides for damages of $250.00 per workday for each workday an employee fails to receive a wage statement, up to $5,000.00. *Id.* § 198(1-d). Irrespective of whether Plaintiff should have been paid weekly (as he alleges) or biweekly, Plaintiff's alleged damages for the purported failure to provide him a wage statement would be $5,000.00 [$250.00 * ((27 weeks * 6 days) – 7 days)].

f. In the event of a first offense for failure to pay manual workers on a weekly basis, the NYLL provides for damages of:

> no more than 100 percent of the lost interest found to be due for the delayed payment using a daily interest rate for each day payment is late based on the annual rate of interest then in effect, as prescribed by the superintendent of financial services pursuant to [section 14-a of the New York Banking Law].

*Id.* § 198(1-a)(i). Section 14-a(1) of the New York Banking Law says, "the maximum rate . . . shall be [16] per centum per annum." N.Y. Bank. Law § 14-a(1). Using the 16 percent annual rate, the daily interest rate for each day payment is late is about 0.044 percent or 0.307 percent per week. Assuming Plaintiff worked 60 hours per week (instead of 70 as he alleges) and half of Plaintiff's pay from July 26, 2025 through February 2, 2026 was untimely, Plaintiff's alleged damages for

the purported failure to pay him on a weekly basis would be $116.97 [(((($40.32 * 40) + ($40.32 * 1.5 * 20)) * 27 weeks) / 2) * 0.00307].

g. The NYLL provides that "[a]ll employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages," N.Y. Lab. Law § 198(3), including "liquidated damages equal to [100] percent of the total of such underpayments found to be due," *id.* § 663(1) "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," *id.* §§ 198(1-a), 663(1). Using the calculations above, Plaintiff's alleged liquidated damages would be $35,780.60 [$535.40 + $32,659.20 + $2,586.00]. (*See supra* ¶ 26.a-c.)

h. The NYLL allows a plaintiff to recover attorneys' fees for wage and hour violations, including if there is a failure to pay wages or provide wage notices and wage statements. N.Y. Lab. Law §§ 198(1-a), 198(1-b), 198(1-d), 663(1). It is proper to consider attorneys' fees when quantifying the amount in controversy. *CG Access Grp., LLC v. Fabrique Innovations, Inc.*, No. 1:24-cv-03230-JLR, 2024 WL 4817465, at *3 (S.D.N.Y. Nov. 18, 2024); *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 326 (S.D.N.Y. 2002); *Henry v. Warner Music Grp. Corp.*, No. 13-cv-1531-PGG, 2014 WL 1224575, at *3 (S.D.N.Y. Mar. 24, 2014). Plaintiff seeks to recover attorneys' fees. (Ex. A. ¶¶ 77, 84, 92, 101, 106, 120; *id.* at p. 26 ("Prayer for Relief").). Assuming Plaintiff's attorneys' fees are one-third of his alleged damages based on the foregoing calculations, Plaintiff's attorneys' fees would be $26,953.80 [($535.40 + $32,659.20 + $2,586.00 + $5,000.00 + $5,000.00 + $116.97 + $35,780.60) * 0.33]. (*See supra* ¶ 26.a-g.)

i. As such, taking just some of Plaintiff's alleged damages into

consideration[4]—but without conceding that he is entitled to any relief at all—the amount placed in controversy by his claims surpasses $75,000.00, making removal proper under 28 U.S.C. §§ 1332, as summarized in the table below:

| Claim | Alleged Damages |
|---|---:|
| Uniform Maintenance Pay | $535.40 |
| Overtime Pay | $32,659.20 |
| Spread of Hours Pay | $2,586.00 |
| Wage Notice | $5,000.00 |
| Wage Statement | $5,000.00 |
| Untimely Pay | $116.97 |
| Liquidated Damages | $35,780.60 |
| Attorneys' Fees | $26,953.80 |
| **Total** | **$108,631.97** |

27. Plaintiff's putative class claims do not alter this analysis as only the named plaintiff is considered for diversity jurisdiction purposes and Plaintiff's individual claims exceed the amount in controversy requirement. *Achtman*, 464 F.3d at 334 (in "a class action . . . at least one [] named plaintiff must meet the $75,000.00 amount-in-controversy requirement for the exercise of diversity jurisdiction.").

28. The diversity of citizenship and amount in controversy requirements for removal are satisfied.

II. <u>This Court has jurisdiction pursuant to the Class Action Fairness Act.</u>

29. Under the Class Action Fairness Act (CAFA), federal district courts have original jurisdiction over a class action whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is" at least 100, *id.* § 1332(d)(5)(B); and

[4] Plaintiff also asserted claims related to the deprivation of "service fee charges" and "funds that patrons intend[ed] to be paid to the waitstaff and other non-managerial service workers," which further increase the amount in controversy. (Ex. A ¶¶ 112-113, 131.)

(3) “the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs,” *id.* § 1332(d)(2). “The party invoking federal jurisdiction under CAFA has the burden of showing that the case falls within a district court’s jurisdiction.” *Hines v. Overstock.com, Inc.*, Case No. 09-cv-991-SJ, 2013 WL 4495667, at *5 (E.D.N.Y. Aug. 19, 2013).

30. All three CAFA requirements are satisfied in this case and no exception to the exercise of federal jurisdiction applies. *See, e.g.*, 28 U.S.C. § 1332(d)(4)(A)-(B).

31. This Court has original jurisdiction over this matter pursuant to CAFA. 28 U.S.C. §§ 1332(d), 1453.

32. Therefore, removal of this case is proper pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

A. <u>At least one putative class member is a citizen of a state different from at least one Defendant.</u>

33. To satisfy CAFA’s diversity requirement, a party seeking removal need only show minimal diversity—that is, that one putative class member is a citizen of a state different from that of one defendant. *Id.* § 1332(d)(2); *see Hines v. Overstock.com, Inc.*, No. 09-cv-991-SJ, 2013 WL 4495667, at *5 (E.D.N.Y. Aug. 19, 2013).

34. As discussed above, Plaintiff is and has been a citizen of New York and Defendants are and have been citizens of Delaware and Maryland. Therefore, at least one member of the putative class is a citizen of a state different than one Defendant.

35. As a result, minimal diversity exists under CAFA.

B. <u>The proposed plaintiff class consists of at least 100 members.</u>

36. Removal under CAFA is appropriate where there are at least 100 members of all proposed plaintiff classes in the aggregate. *See* 28 U.S.C. § 1332(d)(5)(B).

37. Plaintiff seeks to represent a class comprised of: “[a]ll current and former hourly-

paid or non-exempt employees who worked for Defendants in New York during the period from six years prior to the filing of this Complaint to the date of final judgement in this action." (Ex. A ¶ 29.)

38. Based on available data, Defendants have employed at least 3,522 individuals as hourly, non-exempt employees in New York since April 28, 2020 ("Putative Class Members"). (Ex. F ¶ 5.)

39. As such, the putative class as set forth in the complaint exceeds 100 members, and the second jurisdictional requirement under CAFA is satisfied.

C. The amount in controversy exceeds $5,000,000.00.[5]

40. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6).

41. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.

42. Congress intended for federal jurisdiction to attach under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive

---

[5] This notice of removal addresses the alleged nature and amount of damages placed at issue by the complaint. Defendants reference to alleged damage amounts and its citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that Plaintiff's claims are without merit and that Defendants are not liable to Plaintiff or the putative class he purports to represent. Defendants specifically deny that Plaintiff or any other alleged class member has a viable claim against Defendants and/or has suffered any damage as a result of any act or omission by any Defendant. No statement or reference contained in this filing—or any other filing—shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages amounts based upon the allegations contained in the complaint or otherwise.

relief, or declaratory relief)." S. Rep. No. 109-14, *as reprinted* in 2005 WL 627977, at *42–43 (1st Sess. 2005).

43. To satisfy the amount-in-controversy requirement under CAFA, the party seeking removal "must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million." *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 250 (S.D.N.Y. 2013) (citing *Blockbuster*, 472 F.3d at 59). In determining whether the removing defendants have met this burden, courts look first to the complaint and then to the defendants' petition for removal. *Id*. Where the pleadings are inconclusive of the amount in controversy, a court may consider evidence outside those pleadings in the record. *Id*.

44. Once the party seeking removal has satisfied its burden of demonstrating that the amount in controversy has been met, plaintiffs can defeat jurisdiction only by demonstrating "to a legal certainty" that the amount recoverable does not meet the $5,000,000.00 threshold. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). This is a "difficult burden to overcome." *Hines*, 2013 WL 4495667, at *6 (citing *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co.*, 93 F.3d 1064, 1070 (2d Cir. 1996)). Under the "legal certainty" standard, plaintiffs must demonstrate that "[t]he legal impossibility of recovery [is] so certain as virtually to negative [their] good faith in asserting the claim." *Scherer*, 347 F.3d at 397; *see Hines*, 2013 WL 4495667, at *6.

45. CAFA's legislative history also makes clear that doubts regarding the maintenance of class actions in state or federal court should be resolved in favor of federal jurisdiction. *See, e.g.*, S. Rep. 109-14, reprinted in 2005 WL 627977, at *43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal

court if properly removed by any defendant.”).

46. While Defendants deny Plaintiff’s factual allegations and deny that Plaintiff or any member of the putative class that Plaintiff purports to represent are entitled to the relief sought in the complaint, Defendants—based on the allegations in the complaint—have established herein to a “reasonable probability” that the amount in controversy of the putative classes as alleged in the complaint exceeds $5,000,000.00. Defendants specifically deny that Plaintiff or any other alleged class member has a viable claim against Defendants and/or has suffered any damage as a result of any act or omission by any Defendant.

47. Plaintiff purports to seek, on behalf of not only himself but also the Putative Class Members, “damages,” “non-overtime wages, including minimum and regular wages, uniform maintenance pay, reimbursement for business expenses (e.g., uniforms),” “overtime wages,” damages for failure to provide “spread of hours” pay, damages for “failure to timely pay wages” to manual workers on a weekly basis, up to $5,000.00 for the alleged failure to provide wage notices, up to $5,000.00 for the alleged failure to provide wage statements, “attorneys’ fees and costs,” “equitable and injunctive relief to remedy violations,” and “other relief.” (*See* Ex. A ¶¶ 7, 46-134; *id.* at p. 26 (“Prayer for Relief”).) Plaintiff claims Defendants’ purported violations were “willful.” (*Id.* ¶¶ 6, 70, 83, 99, 105, 114.)

48. Plaintiff further alleges that, like him, the Putative Class Members “worked [10] or more hours a day,” “worked more than seven consecutive days,” and “worked over [40] hours in workweek and were not compensated for the overtime hours worked.” (*See id.* ¶¶ 74, 118, 126.)

49. Plaintiff’s allegations, some individually, put the amount in controversy in excess of $5,000,000.00. For instance:

a. From April 28, 2020 through December 31, 2023, the weekly rate of

uniform maintenance pay for employees who worked over 30 hours per week in New York City for an employer of 11 or more employees was $18.65. 12 N.Y.C.R.R. § 146-1.7(a)(1)(i). The rate increased to $19.90 on January 1, 2024, $20.50 on January 1, 2025, and $21.10 on January 1, 2026. *Id.* Based on available data, Putative Class Members worked (i) at least 151,693 weeks from April 28, 2020 through December 31, 2023 in New York City, (ii) at least 64,256 weeks from January 1, 2024 through December 31, 2024 in New York City, (iii) at least 64,522 weeks from January 1, 2025 through December 31, 2025 in New York City, and (iv) at least 24,635 weeks since January 1, 2026 in New York City. (Ex. F ¶ 6.) Assuming these Putative Class Members were entitled to uniform maintenance pay these weeks, the alleged damages for the purported unpaid uniform maintenance pay would be $5,950,268.35 [($18.65 * 151,693 weeks) + ($19.90 * 64,256 weeks) + ($20.50 * 64,522 weeks) + ($21.10 * 24,635 weeks)].

b. From April 28, 2020 through December 30, 2020, the weekly rate of uniform maintenance pay for employees who worked over 30 hours per week in Nassau County, Suffolk County, or Westchester County was $16.20. 12 N.Y.C.R.R. § 146-1.7(a)(2). The rate increased to $17.40 on December 31, 2020, $18.65 on December 31, 2021, $19.90 on January 1, 2024, $20.50 on January 1, 2025, and $21.10 on January 1, 2026. *Id.* Based on available data, Putative Class Members worked (i) at least 3,927 weeks from April 28, 2020 through December 30, 2020 in Nassau, Suffolk, or Westchester Counties, (ii) at least 5,822 weeks from December 31, 2020 through December 30, 2021 in Nassau, Suffolk, or Westchester Counties, (iii) at least 12,389 weeks from December 31, 2021 through December 31, 2023 in Nassau, Suffolk, or Westchester Counties, (iv) at least 6,659 weeks from January 1, 2024 through December 31, 2024 in Nassau, Suffolk, or Westchester Counties, (v) at least 6,292 weeks from January 1, 2025 through December 31, 2025 in Nassau, Suffolk, or Westchester Counties, and (vi) at least 2,568 weeks since January

1, 2026 in Nassau, Suffolk, or Westchester Counties. (Ex. F ¶ 7.) Assuming these Putative Class Members were entitled to uniform maintenance pay these weeks, the alleged damages for the purported unpaid uniform maintenance pay would be $711,659.95 [($16.20 * 3,927 weeks) + ($17.40 * 5,822 weeks) + ($18.65 * 12,389 weeks) + ($19.90 * 6,659 weeks) + ($20.50 * 6,292 weeks) + ($21.10 * 2,568 weeks)].

c. From April 28, 2020 through December 31, 2023, the minimum hourly wage for employees who worked in New York City for an employer of 11 or more employees was $15.00. N.Y. Lab. Law § 652(1)(a)(i). The rate increased to $16.00 on January 1, 2024, $16.50 on January 1, 2025, and $17.00 on January 1, 2026. *Id.* § 652(1-a)(a). Assuming each Putative Class Member worked only six days per week (instead of seven as Plaintiff alleges) and was entitled to spread of hours pay each day he worked, the Putative Class Members' purported alleged damages for the purported unpaid spread of hours pay would be $28,721,394.00 [($15.00 * 151,693 weeks * 6 days) + ($16.00 * 64,256 weeks * 6 days) + ($16.50 * 64,522 weeks * 6 days) + ($17.00 * 24,635 weeks * 6 days)].

d. From April 28, 2020 through December 30, 2020, the minimum hourly wage for employees who worked in Nassau County, Suffolk County, or Westchester County was $13.00. N.Y. Lab. Law § 652(1)(b). The rate increased to $14.00 on December 31, 2020, $15.00 on December 31, 2021, $16.00 on January 1, 2024, $16.50 on January 1, 2025, and $17.00 on January 1, 2026. *Id.* § 652(1)(b), (1-a)(b). Assuming each Putative Class Member worked only six days per week (instead of seven as Plaintiff alleges) and was entitled to spread of hours pay each day he worked, the Putative Class Members' purported alleged damages for the purported unpaid spread of hours pay would be $3,434,472.00 [($13.00 * 3,927 weeks * 6 days) + ($14.00 * 5,822 weeks * 6 days) + ($15.00 * 12,389 weeks * 6 days) + ($16.00 * 6,659 weeks * 6 days) + ($16.50

* 6,292 weeks * 6 days) + ($17.00 * 2,568 weeks * 6 days)].

e. The NYLL provides for damages of $50.00 per workday for each workday an employee fails to receive a wage notice within 10 business days of commencing employment, up to $5,000.00. N.Y. Lab. Law § 198(1-b). This means an employee can seek the full $5,000.00 if the employee fails to receive a wage notice for 100 workdays. Each Putative Class Member who was employed for more than 126 days would be entitled to $5,000.00 for this claim based on Plaintiff's allegations: each Putative Class Member should have received a wage statement within 10 business days of commencing employment and, assuming each worked only six days per week (instead of the seven Plaintiff alleges), would have failed to receive a wage notice for 100 workdays by the 126th day of employment. Based on available data, 2,070 Putative Class Members have worked more than 126 days since April 28, 2020. (Ex. F ¶ 8.) Accordingly, the alleged damages for the purported failure to provide wage notices would be $10,350,000.00 [$5,000.00 * 2,070 Putative Class Members who worked more than 126 days].

f. The NYLL provides for damages of $250.00 per workday for each workday an employee fails to receive a wage statement, up to $5,000.00. N.Y. Lab. Law § 198(1-d). This means an employee can seek the full $5,000.00 if the employee fails to receive a wage statement for 20 workdays. Each Putative Class Members who was employed for more than 37 days would be entitled to $5,000.00 for this claim based on Plaintiff's allegations: each Putative Class Member should have received a wage statement within 14 days of commencing employment and, assuming each was a manual worker entitled to weekly pay and worked only six days per week (instead of the seven Plaintiff alleges), would have failed to receive a wage statement for 20 workdays by the 37th day of employment. Based on available data, 2,325 Putative Class Members have worked more than 37 days since April 28, 2020. (Ex. F ¶ 9.) Accordingly, the alleged damages for the

purported failure to provide wage statements would be $11,625,000.00 [$5,000.00 * 2,325 Putative Class Members who worked more than 37 days].

g. The NYLL provides that "[a]ll employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages," N.Y. Lab. Law § 198(3), including "liquidated damages equal to [100] percent of the total of such underpayments found to be due," *id.* § 663(1) "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," *id.* §§ 198(1-a), 663(1). Using the calculations above, alleged liquidated damages would be $38,817,794.30 [$5,950,268.35 + $711,659.95 + $28,721,394.00 + $3,434,472.00]. (*See supra* ¶ 49.a-d.)

h. The NYLL allows a plaintiff to recover attorneys' fees for wage and hour violations, including if there is a failure to pay wages or provide wage notices and wage statements. N.Y. Lab. Law §§ 198(1-a), 198(1-b), 198(1-d), 663(1). It is proper to consider such amount when quantifying the amount in controversy. *CG Access*, 2024 WL 4817465, at *3; *Metcalf*, 632 F. Supp. 3d at 326; *Henry*, 2014 WL 1224575, at *3. Plaintiff seeks to recover attorneys' fees. (Ex. A. ¶¶ 77, 84, 92, 101, 106, 120; *id.* at p. 26 ("Prayer for Relief")). Assuming attorneys' fees are one-third of the Putative Class Members' alleged damages based on the foregoing calculations, the attorneys' fees would be $20,264,244.50 [$5,950,268.35 + $711,659.95 + $28,721,394.00 + $3,434,472.00 + $10,350,000.00 + $11,625,000.00]. *Metcalf*, 632 F. Supp. 3d at 327 (considering attorneys' fees in CAFA threshold calculation and reasoning that courts typically award attorneys' fees representing one-third of total recovery). (*See supra* ¶ 49.a-g.)

50. The amount in controversy in this action, therefore, meets CAFA's monetary threshold.

51. The diversity of citizenship, putative class size, and amount in controversy

requirements under CAFA are satisfied.

III. The other perquisites for removal are satisfied.

A. This notice of removal is timely.

52. A notice of removal is timely if it is filed:

> within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

53. This notice of removal has been timely filed. Plaintiff served Defendants' registered agent with a copy of the summons and complaint on May 1, 2026, and Defendants have filed the notice of removal within 30 days thereof. Defendants did not receive a copy of the initial pleading setting forth the claim for relief upon which this action is based prior to Plaintiff's service of a copy of the summons and complaint upon Defendants' registered agent. (Ex. A).

54. No previous notice of removal has been filed or made with this Court for the relief sought herein.

B. Venue is proper in this Court.

55. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

56. Venue is proper in this Court because the United States District Court for the Southern District of New York is the federal judicial district embracing the Supreme Court of New York, County of New York where Plaintiff originally filed this action. Ex. A; 28 U.S.C. §§ 112, 1391, 1441(a).

C. <u>This notice of removal complies with 28 U.S.C. §§ 1445 and 1446.</u>

57. This action is not a non-removable action as the case is not "[a] civil action in any State court against a railroad or its receivers or trustees, arising under [45 U.S.C. §§ 51-54, 55-60]," "[a] civil action in any State court against a carrier or its receivers or trustees to recover damages for delay, loss, or injury of shipments, arising under [49 U.S.C. §§ 11706, 14706]," "[a] civil action in any State court arising under the workmen's compensation laws of such State," or "[a] civil action in any State court arising under section 40302 of the Violence Against Women Act of 1994." 28 U.S.C. § 1445.

58. Written notice of the filing of this notice of removal with attached exhibits will be given to Plaintiff and a copy of the notice of removal will be filed with the Clerk of the Supreme Court of the State of New York, County of New York promptly after this notice of removal is filed. *See* 28 U.S.C. § 1446(d).

59. By filing this notice of removal, Defendants do not waive any arguments, defenses (including affirmative defenses), or rights, all of which are hereby specifically reserved.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants remove this action to this Court and respectfully request that this Court assume complete jurisdiction over the case and that the Supreme Court of the State of New York, County of New York proceed no further with respect to this case.

DATED: New York, New York
June 1, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Christopher A. Parlo*

Christopher A. Parlo
James J. La Rocca

101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000

Fax: (212) 309-6001
christopher.parlo@morganlewis.com
james.larocca@morganlewis.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN ROSADO, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>THE RITZ-CARLTON HOTEL COMPANY, L.L.C., and MARRIOTT INTERNATIONAL, INC.,<br><br>Defendant. | <u>CERTIFICATE OF SERVICE</u><br><br>Civil Action No. |

I certify that, on the date set forth below, I caused the foregoing document, including exhibits, to be e-filed with the Court via the CM/ECF system. I further certify that I caused the foregoing document, including exhibits, to be served on the following by e-filing the Notice of Filing of Notice of Removal containing the foregoing document, including exhibits, in *Juan Rosado v. The Ritz-Carlton Hotel Company, L.L.C.*, index number 155428/2026, via the NYSCEF system, and also caused a copy of the foregoing document to be served on the following by electronic and overnight mail:

Sabine Jean
LAWYERS FOR JUSTICE, P.C.
217 Broadway, Suite 511
New York, New York 10007
Tel: (516) 587-8423
Fax: (818) 265-1021
s.jean@calljustice.com
*Attorneys for Plaintiff*

DATED: New York, New York
June 1, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Christopher A. Parlo*
Christopher A. Parlo

101 Park Avenue

New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
james.larocca@morganlewis.com
*Attorneys for Defendants*